IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ZANDER LAMONT RICHARDSON, JR., | * |
| Plaintiff | * |
| v | *   CIVIL ACTION NO. JKB-19-1151 |
| J. MILLS, et al., | * |
| Defendants | * |

*****

## MEMORANDUM OPINION

Maryland inmate Zander Lamont Richardson, Jr., filed an unverified Complaint alleging that he was physically assaulted by correctional officers while housed at North Branch Correctional Institution. Compl., ECF No. 1. He also claims that after he was assigned to segregation he did not receive his property for several days and that his requests for assistance were ignored. *Id.*

Defendants CO II Joshua Mills and Lieutenant Jeremy Crites[1] filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 10, along with a Memorandum in Support, ECF No. 10-1, and Plaintiff filed an Opposition, ECF No. 12. The matter is now ripe for review. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons following, Defendants' Motion will be treated as a Motion for Summary Judgment and will be granted.

## BACKGROUND

Richardson claims that on March 9, 2019, while in a holding cell at North Branch Correctional Institution (NBCI), he was urinating when he was aggressively approached by Officer J. Mills who ordered Richardson to "cuff up." ECF No. 1, p. 2. When he finished urinating

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants.

Richardson washed his hands and began to comply with the officer's order, but asked why he was being directed to "cuff up." The order was repeated and then "a forceful thrust upon [Richardson's] wrist was applied followed by punching then tackling." *Id.*, p. 3. Richardson states that his wrist is scarred and painful. *Id.* He was placed in disciplinary segregation housing where he did not receive his hygiene property for 16 days, nor his asthma medication for almost 30 days. *Id.* Richardson states that staff ignored his requests for assistance, but he "received grievances and this complaint via inmate [mail]." *Id.* On April 29, 2019, Richardson filed ARP NBCI-0829-19 complaining that he was assaulted by Crites and Mills on March 8, 2019. ECF No. 12-1, p. 1. The ARP was dismissed on May 1, 2019, with a notation that it was being investigated by the Internal Investigation Division. *Id.*

Defendants offer a different version of events. Mills explains that he was sitting in the Officer's Station of Richardson's housing unit when he saw Richardson go into a cell from the showers and then pop his head in and out of the cell looking toward the Officer's Station.

> Defendant Mills investigated this suspicious behavior and when he arrived at the cell, observed Plaintiff go to the toilet with his pants around his ankles, stroking his erect penis; Plaintiff complied with initial orders to stop, exit the cell and place his hands behind his back to be handcuffed, but once his left wrist was handcuffed, resisted further attempts to be handcuffed by attempting to break free from Defendant Mill's grasp; Defendant Mills was assisted by Officer [Emma] Crites and other officers before Plaintiff was eventually restrained in handcuffs.

ECF No. 10-4, p. 20; *see also id.*, pp. 10-11. After the altercation Richardson was taken to the medical unit where he refused to be seen by medical staff but did not appear to have any injuries. ECF No. 10-6, pp. 3, 15; ECF No. 10-4, pp. 27-29.

After the incident, Richardson was placed on staff alert, and after the rule violation hearing placed on disciplinary segregation. ECF No. 10-4, pp. 1-2, ¶¶ 2, 6, 7. He was not allowed personal property while on staff alert. *Id.*, p. 1, ¶ 3. His allowable personal property was returned to him on

2

March 19, 2019. *Id.*, p. 2, ¶ 6.

Richardson's medical records demonstrate that the only prescription medication listed on his January 1, 2019 records is for tolnaftate, an anti-fungal agent. ECF No. 10-6, pp. 22, 24. He did not have a prescription for asthma medication. *Id.*, pp. 20-24. He used the sick call process while on disciplinary segregation but did not offer any complaints regarding his wrist. ECF No. 10-6.

Jeremy Crites explains that his only involvement in the matter was attempting to interview Richardson during the investigation of the use of force. ECF No. 10-3, p. 1, ¶¶3-5. Richardson was charged with rule violations as a result of the incident and found guilty. ECF No. 10-4, pp. 43-44.

Richardson did not file any ARP appeals or grievances with the Inmate Grievance Office regarding the alleged assault or his being denied his property or medications while he was held on segregation. ECF No. 10-7, p. 1., ¶¶ 2-3.

## STANDARD OF REVIEW

Defendants' motion will be treated as one for summary judgment under Federal Rule of Civil Procedure 56. Defendants have submitted materials outside the original pleadings and Plaintiff was given the opportunity to object or otherwise respond to such evidence. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

A motion for summary judgment is granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va. v. Judd*, 718 F.3d

308, 312 (4th Cir. 2013); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). District courts must "thoroughly analyze[ ]" even an unopposed motion for summary judgment. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013) (citing *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n.8 (4th Cir. 2010)). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *CX Reinsurance Co. Ltd. v. Heggie*, ELH-15-1674, 2016 WL 6025488, at *5 (D. Md. 2016) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

## DISCUSSION

Richardson's complaint is subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e because it has not been properly presented through the administrative remedy procedure. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).

4

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. *See Ross v. Blake*, 578 U.S. __, 136 S.Ct. 1850, 1856-57 (2016).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Division of Correction official or employee. Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S.") § 10-206(a). However, if the prison has

a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

Inmates housed at an institution operated by Maryland Department of Public Safety and Correctional Services ("DPSCS") may avail themselves of the administrative grievance process which is designed for "inmate complaint resolution." *See generally* C.S. §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining "ARP"). The ARP process applies to the majority of inmate complaints including allegations that correctional officers used excessive force. COMAR 12.02.28.04(A)(7). Filing a complaint with the DOC's Intelligence and Investigative Division does not count as an administrative remedy and does not excuse the inmate from pursuing the administrative remedy process. COMAR 12.02.28.05(H). If an ARP is filed and denied, the prisoner may appeal the denial with 30 days to the Commissioner of Correction.

If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days. C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Here, while Richardson filed an untimely ARP concerning the alleged assault, he did not file any ARP regarding his property claims, and it is clear that after his initial ARP regarding the assault was denied he did not pursue that claim to the IGO as required. As discussed above, the PLRA requires that inmates exhaust all available remedies. Because Richardson failed to do so,

Defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' dispositive Motion, construed as a Motion for Summary Judgment is granted. A separate Order follows.

Dated this 3 day of Sept, 2020.

FOR THE COURT:

James K. Bredar
Chief Judge